# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mohamed A., | Case No. 19-cv-49 (ECT/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Krisjen Neilsen, et al., | |
| Respondents. | |

This matter is before the Court on Mohamed A.'s ("Petitioner") Petition for a Writ of Habeas Corpus (Dkt. No. 1) ("Petition") and Petitioner's Motion for Extension of Time (Dkt. No. 14). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that Petition be granted in part and denied in part, and the Court denies the Motion for Extension as moot.

## I. BACKGROUND

### A. Petitioner's Immigration Background

Petitioner is a 27-year-old citizen of Somalia and native of Kenya. (Dkt. No. 6-5, Ex. E[1] at 6; Dkt. No. 6 ¶ 4.) Petitioner was born and raised in Kenya and has never been to Somalia. (Dkt. No. 6-5, Ex. E at 6.) Petitioner entered the United States in September

---

[1] Dkt. No. 6-5 was docketed as Exhibit E but has a sticker labeling it as Exhibit F. Dkt. No. 6-6 also has a sticker labeling it as Exhibit F. The Court will refer to Dkt. No. 6-5 as Exhibit E.

2005 as an asylee and adjusted his status to legal permanent resident in 2008.  (*Id.*; Dkt. No. 6 ¶¶ 5-6.)  Petitioner is single and has no children.  (Dkt. No. 6-5, Ex. E at 6.)  Petitioner's parents and three siblings are all naturalized U.S. citizens.  (*Id.*)

**B.     Petitioner's Criminal Record**

Petitioner was convicted of burglary on January 25, 2012 in the Superior Court of California, County of San Diego and sentenced to one day.  (Dkt. No. 6 ¶ 7; Dkt. No. 6-1, Ex. A.)  On April 12, 2012, Petitioner was convicted of two counts of burglary and sentenced to 150 days by the same court.  (Dkt. No. 6 ¶ 8; Dkt. No. 6-2, Ex. B.)  In 2016, Petitioner was convicted of four offenses in Hennepin County, Minnesota, including careless driving, tampering with a motor vehicle, and twice giving a peace officer a false name.  (Dkt. No. 6 ¶¶ 9-12.)  On February 15, 2017, Petitioner was convicted of disorderly conduct in Rice County, Minnesota.  (*Id.* ¶ 14.)  On March 9, 2017, Petitioner was convicted of felony aiding and abetting simple robbery in Rice County, Minnesota and sentenced to 364 days.  (Dkt. No. 6 ¶ 13; Dkt. No. 6-3, Ex. C.)  On May 11, 2017, Petitioner was convicted of giving a peace officer a false name in Dakota County, Minnesota and sentenced to 3 days.  (*Id.* ¶ 15.)  On December 12, 2017, Petitioner was re-sentenced to 10 days for not completing his sentence to service.  (*Id.*)

**C.     Petitioner's Removal Proceedings**

On December 13, 2017, Immigration and Customs Enforcement ("ICE") encountered Petitioner at the Dakota County Jail after his re-sentencing.  (Dkt. No. 6 ¶ 16.)  ICE lodged a detainer request with the jail.  (*Id.*)  On December 18, 2017, ICE served Petitioner with a Notice to Appear based on his having been convicted of two

crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (Dkt. No. 6-4, Ex. D; Dkt. No. 13 at 2-3.) The same day, the Dakota County Jail released Petitioner to ICE custody. (Dkt. No. 6 ¶ 17.)

In his removal proceedings, Petitioner conceded removability based on the convictions of two crimes of moral turpitude, but requested asylum, withholding of removal, or deferral of removal under the Convention Against Torture. (Dkt. No. 13 at 3; Dkt. No. 6-5 at 1-2.) On March 21, 2018, Immigration Judge ("IJ") Ryan R. Wood granted Petitioner's requests for withholding of removal, denied Petitioner's request for asylum, and ordered Petitioner removed to any country other than Somalia. (Dkt. No. 6-5, Ex. E at 13.) The Government appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which remanded the proceedings and directed the IJ to fully evaluate the evidence regarding Petitioner's alleged risk of persecution in Somalia and alternatively Petitioner's eligibility under the Convention Against Torture. (Dkt. No. 6-6, Ex. F.)

On November 20, 2018, the IJ issued an order on remand and again granted Petitioner application for withholding of removal. (Dkt. No. 1-1, IJ Order at 17.) The IJ ordered Petitioner removed to any country other than Somalia that will accept him. (*Id.*) The Government appealed the second IJ order to the BIA on December 10, 2018. (Dkt. No. 6 ¶ 24; Dkt. No. 6-8, Ex. H; Dkt. No. 13 at 3.) The Court has not been informed of any orders issued by the BIA in the second appeal.

## II.  LEGAL STANDARD

**A.  Detention under Habeas Corpus**

"Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). Congress has imposed statutory limits on habeas corpus petitions in immigration proceedings. For example, a petition for review from an order of removal cannot be brought under the habeas statute and must go directly to the circuit courts of appeals. *See* 8 U.S.C. § 1252(a)(5). While § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), judicial review of detention decisions made under 8 U.S.C. § 1226 is limited by the following provision:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

*Id.* § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). However, the Supreme Court has determined that § 1226(e) does not bar a constitutional challenge to the length of pre-removal detention. *See Demore*, 538 U.S. at 517; *Zadvydas*, 533 U.S. at 688; *see also Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

B.     **Detention of Aliens under 8 U.S.C. § 1226(c)**

INS detained Petitioner pursuant to 8 U.S.C. § 1226(c) because he was charged with removability based on a conviction which ICE contended qualifies as an aggravated felony.  *See* 8 U.S.C. § 1226(c)(1)(B), (C).  Under § 1226(c)(2):

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2).

Section "1226(c) *mandates* detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (emphasis added).

Regardless of the language of § 1226(c) requiring mandatory detention of aliens, the Fifth Amendment's Due Process Clause forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The Supreme Court has emphasized that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690.  Indeed, the United States Supreme Court has affirmed that

"[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*; *see generally*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that, in order to justify continued confinement of a mentally ill person after a not-guilty-by-reason-of-insanity verdict for the purposes of due process, a state bears the burden of showing "by clear and convincing evidence that the individual is mentally ill and dangerous") (internal quotation marks omitted).

In *Zadvydas*, the Supreme Court examined a different statute, 8 U.S.C. § 1231(a)(6), which provides that certain aliens who have been ordered to be removed may be detained "beyond the removal period and, if released, shall be subject to [certain] terms of supervision." The Court rejected a literal reading of 8 U.S.C. § 1231(a)(6), expressing concern that detention under § 1231(a)(6), which often occurs when the Department of Homeland Security has difficulty finding placement for an alien abroad, could become indefinite. 533 U.S. at 682. The Court noted "the serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious." *Id.* at 692. The Court concluded that in order to avoid this possible constitutional problem, detention pursuant to § 1231(a)(6) is presumed reasonable for six months. *Id.* at 701. Continued detention after six months is unlawful if (1) an alien shows that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing with evidence. *Id.* at 701.

In *Demore*, the Supreme Court subsequently held that the mandatory detention of an alien under § 1226(c) was a constitutionally permissible part of the removal process

6

for the "limited period" required to complete the removal proceedings. 538 U.S. at 531. The *Demore* Court distinguished its decision in *Zadvydas* where it held that an alien subject to a final order of removal could not be indefinitely detained pursuant to 8 U.S.C. § 1231, the statute that pertains to the detention of aliens ordered removed. *Id.* at 527-30. First, the Court emphasized that detention under § 1226(c) served the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings. *Id.* at 528. More importantly, the Supreme Court noted that aliens detained under § 1226(c) spend an average of forty-seven days in government custody pending the conclusion of removal proceedings and an average of four months in custody if they appeal, a period just under six months. *Id.* at 529. According to the Court in *Demore*, this "limited period" of detention during removal proceedings was "a constitutionally permissible part of the process." *Id.* at 530. Justice Kennedy in his concurrence found that while 1226(s) is not *per se* unconstitutional, "were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33 (Kennedy, J., concurring).

Subsequently, the Supreme Court in *Jennings*, *supra*, called into question whether due process requires a six-month bright-line limitation on the detention of aliens under § 1226(c). The Court reversed the Ninth Circuit's holding that noncitizens detained under 8 U.S.C. §§ 1225(b)(1), (b)(2), and 1226(c) were entitled to bond hearings every six months. *See Jennings*, 138 S. Ct. at 839, 842. The Court held that the plain language of

7

1226(c) was unambiguous and "makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'"  *Id.* at 846 (emphasis in original); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, No. 17-2814, 2018 WL 4997934, at *3 (3d Cir. Oct. 16, 2018) ("By its terms, § 1226(c) does not entitle detainees to a bond hearing.").

However, the Court in *Jennings* declined to reach the issue of whether prolonged detention under §1226(c) is at a certain point unconstitutional.  *Id.* at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits . . . . [W]e remand the case to the Court of Appeals to consider them in the first instance."); *see also Borbot*, 2018 WL 4997934, at *4 ("*Jennings* did not call into question our constitutional holding . . . that detention under § 1226(c) may violate due process if unreasonably long.").

While the Eighth Circuit has not addressed detention under § 1226(c) after *Jennings*, courts in this District have addressed due process challenges to prolonged detention under § 1226(c) and have concluded that the Due Process Clause imposes a limitation on the length of § 1226(c) detention.  These courts have concluded that a due process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable.  *See*, *e.g.*, *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sep. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL

2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018).

U.S. District Judge Patrick J. Schiltz, in his survey of post-*Jennings* caselaw, noted that courts using a fact-specific inquiry in the context of detention under § 1226(c) have examined several factors to guide them in identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Muse*, 2018 WL 4466052, at *3 (marks and citation omitted). These factors include: (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.* (citing *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018)). The Government argues that the Court should not apply the *Reid* factors because the First Circuit withdrew its opinion after *Jennings*. (Dkt. No. 5 at 15.) However, the First Circuit affirmed the district court's judgment as to its individualized holding with respect to *Reid*'s habeas corpus petition that the detention had become unreasonable, and therefore he was entitled to a bond hearing. *See Reid*, 2018 WL 4000993, at *1; *Reid*, 819 F.3d at 501. Likewise, the Court looks only to *Reid*'s analysis of this individualized decision, rather than the withdrawn holding on the general constitutionality of § 1226.

Many courts in this District have followed the *Muse* court's approach to determining when an alien detained under § 1226(c) is entitled to a bond hearing to prevent a possible violation of Petitioner's due process rights. *See, e.g.*, *Alier D. v. Sec. of Dept. of Homeland Sec.*, 18-cv-01645 (NEB/HB), 2018 WL 5849477 (D. Minn. Sept. 28, 2018), *R&R adopted as modified by*, 2018 WL 5847244, at *3 (D. Minn. Nov. 8, 2018); *Abdulkadir A. v. Sessions*, 18-CV-2353 (NEB/HB), 2018 WL 7048363 (D. Minn. Nov. 13, 2018); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Liban M.J. v. Sec. of Dept. of Homeland Sec.*, 18-CV-1843 (NEB/ECW), 2019 WL 1238834, at *2 (D. Minn. Mar. 18, 2019). Indeed, a number of courts in other districts (post-*Jennings*) have undertaken an individualized fact-specific inquiry in determining if § 1226(c) detainees are entitled to a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the public. *See, e.g.*, *Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199, at *4-5 (S.D.N.Y. Sept. 21, 2018); *Thompson v. Edwards*, No. CV 18-1006 (ES), 2018 WL 4442225, at *4 (D.N.J. Sept. 17, 2018) (granting habeas relief concluding that the petitioner's 26-month detention was unreasonable under the facts presented); *Vega v. Doll*, No. CV 3:17-1440, 2018 WL 3756755, at *4 (M.D. Pa. Aug. 8, 2018); *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018); *Sajous v. Decker*, 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) ("Rather than employ a brightline rule, the Court concludes that whether mandatory detention under § 1226(c) has become 'unreasonable,' and thus a due process violation, must be decided using an as-applied, fact-based analysis" "requiring an assessment of all the circumstances of any given case."); *Obando-Segura v.*

*Whitaker*, CV GLR-17-3190, 2019 WL 423412, at *5 (D. Md. Feb. 1, 2019). The Court agrees with the approach taken in *Muse* and the many other courts to follow suit and will apply the reasonableness factors to determine if Petitioner is entitled to a bond hearing.

### III.   ANALYSIS

**A.   Petitioner is Entitled to a Bond Hearing**

The first and most important factor that courts analyze when determining whether an alien detained under 8 U.S.C. § 1226(c) is entitled to a bond hearing is the length of the detention to date. *See Muse*, 2018 WL 4466052, at *4 ("How long this deprivation has lasted is critical to the due-process inquiry."). Petitioner has been detained since December 18, 2017 (Dkt. No. 6 ¶ 17), meaning he has now been held without a bond hearing for approximately 17 months. The entirety of the 17-month custody has been pursuant to § 1226(c) because the IJ's removal orders to any country other than Somalia were appealed by the Government.[2]

The 17-month detention is "considerably longer than the 'brief' period assumed in *Demore*." *Alier D., Petr.*, 2018 WL 5849477, at *6; *Jamal A.*, 358 F. Supp. 3d at 859 (finding that over 19 months in custody "strongly favors granting [petitioner] a bond hearing"). Indeed, the reasoning of both *Demore* and *Jennings* is predicated on the detention under § 1226(c) being "brief" and having a "definite termination point." *Demore*, 538 U.S. at 531 (noting the "limited period" of detention); *Jennings*, 138 S. Ct. 830, 846 (2018) (noting the "definite termination point"). This 17-month detention is

---

[2]   The Government does not dispute that the detention period is pre-removal detention under § 1226(c). (*See* Dkt. No. 5 at 1.)

11

well within the range courts have found sufficient to require a bond hearing under the Due Process Clause. *See, e.g.*, *Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199, at *5 (S.D.N.Y. Sept. 21, 2018) (seven months); *Liban M.J.*, 2019 WL 1238834, at *3 (twelve months); *Thomas C.A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5-6 (D.N.J. Aug. 29, 2018) (fifteen months); *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (fourteen months); *Sajous*, 2018 WL 2357266, at *1, *7 (eight months); *Mohamed*, 2018 WL 2390132 at *1 (fifteen months); *Jamal A.*, 358 F. Supp. 3d at 859 (nineteen months). "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse*, 2018 WL 4466052, at *4. This factor strongly weighs in favor of granting relief.

The second factor is the likely duration of future detention in the absence of judicial relief. *Muse*, 2018 WL 4466052, at *4. In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *Id.* (citing *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.")). The Government appealed to the BIA on December 10, 2018, and neither party has apprised the Court of any decision issued by the BIA. The remainder of the BIA appeal will take additional time, and may be followed by an appeal to the Eighth Circuit, which could take several months. Accordingly, this factor weighs in Petitioner's favor.

The third factor is the conditions of the petitioner's detention. Aliens detained under § 1226(c) are subject to civil detention rather than criminal incarceration. *See*

12

*Muse*, 2018 WL 4466052, at *4 (citation omitted). Petitioner is currently held at the Kandiyohi County Jail (Dkt. No. 13 at 12),[3] presumably alongside criminal defendants. The Court cannot ignore the fact that deprivation to liberties caused by civil detention brought about by § 1226(c) is not meaningfully differentiated from incarceration. *See Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 220 n.9 (3d Cir. 2018) (citing *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015)); *Muse*, 2018 WL 4466052, at *5 ("The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."). As the length of the detention grows, the weight given to this aspect of his detention increases. *Id.* This factor therefore weighs in Petitioner's favor.

The fourth factor is whether there have been any delays of the removal proceedings caused by the detainee. *See Muse*, 2018 WL 4466052, at *5-6. The Court is not aware of any delays by Petitioner in his proceedings and the Government did not argue that Petitioner created any delays. Accordingly, this factor weighs in Petitioner's favor.

The fifth factor is whether there have been any delays of the removal proceedings caused by the Government. *See Muse*, 2018 WL 4466052, at *6. Although the Government has twice appealed the IJ's decisions, the Court is not aware of any undue delay caused by the government. Like Petitioner's right to file motions, the Government

---

[3] Petitioner was held at the Sherburne County Jail when he filed his Petition (Dkt. No. 1), but he was later moved to the Kandiyohi County Jail (Dkt. No. 9).

is permitted to make arguments and appeals in support of its position. Accordingly, this factor weighs in favor of the Government.

The sixth and final factor is the likelihood that the removal proceedings will result in a final order of removal. "Higher likelihood of the alien's removal means longer periods of detention may be reasonable." *Alier D., Petr.*, 2018 WL 5849477, at *7. Although the IJ has twice ordered Petitioner's removal be withheld, the matter is currently on appeal before the BIA, which previously sustained the Government's appeal. The Court is not in a position to weigh the merits of the removal order, and therefore finds this factor neutral.

In sum, the Court finds that four factors weigh in Petitioner's favor, one factor weighs in the Government's favor, and one is neutral. Based on this individualized fact-specific inquiry of Petitioner's detention, the Court concludes that continued detention of Petitioner without a bond hearing would deprive him of his right to due process under the Fifth Amendment. A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee if not detained "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)." *Muse*, 2018 WL 4466052 at *6. While the Court does not recommend Petitioner's immediate release, it recommends that the IJ be ordered to conduct a bond hearing within 30 days after the adoption of this Report and Recommendation.

B. **Petitioner's Motion for Extension of Time is Moot**

Petitioner requested a 9-day extension to file his reply brief, which was received by the Clerk's Office on April 29, 2019. (Dkt. No. 14.) However, Petitioner's reply brief was received by the Clerk's Office on April 25, 2019. (Dkt. No. 13.) Because the Court recommends that Petitioner be granted a bond hearing and does not find that additional briefing would be beneficial, the Court denies Petitioner's motion as moot.

## IV.     RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) be **GRANTED** in part and **DENIED** in part as follows:

1. Petitioner's request for immediate release be **DENIED**.

2. To the extent that the District Court adopts this Report and Recommendation, an immigration judge should provide Petitioner with a bond hearing within thirty days of the District Court's order. At the bond hearing, the immigration judge should make an individualized determination whether Petitioner's continued detention is necessary to protect the public or to prevent Petitioner from fleeing during the pendency of immigration proceedings.

The Court further **ORDERS** that Petitioner's Motion for Extension of Time (Dkt. No. 14) is **DENIED AS MOOT**.

DATED: May 16, 2019                              *s/Elizabeth Cowan Wright*
                                                 ELIZABETH COWAN WRIGHT
                                                 United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).